## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YAN YAN, | : | CIVIL NO: 4:14-CV-01373 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE | : | |
| UNIVERSITY, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

In this civil action, proceeding *via* an amended complaint, the *pro se* plaintiff, Yan Yan, raises claims against the defendant, Pennsylvania State University ("PSU" or the "University"), pursuant to Title IX of the Education Amendments Act ("Title IX"), 20 U.S.C. § 1681, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Age Discrimination Act, 42 U.S.C. § 6101, *et seq.*; and the Pennsylvania Fair Educational Opportunities Act ("PFEOA"), 24 P.S. § 5001, *et seq.* Yan Yan also seeks remedies under 42 U.S.C. § 1983 for alleged violations of her rights secured by the First and Fourteenth Amendments to the United States Constitution. Finally, Yan Yan raises a claim pursuant to 18 U.S.C. § 2255 for an alleged personal injury. Pending before the Court is PSU's motion to dismiss. Our recommendations follow.

I.    **Background and Relevant Procedural History**.

On July 17, 2014, Yan Yan, a female of Chinese descent, who resides in Philadelphia, Pennsylvania, initiated this lawsuit by filing a complaint against PSU, a land-grant university within the Commonwealth that also receives federal funding.  *Doc.* 1.  Along with her complaint, Yan Yan filed a motion to proceed *in forma pauperis* that we granted.  *Docs.* 2 & 4.  On November 2, 2014, after PSU had waived service, *Doc.* 8, Yan Yan filed an amended complaint, *see Docs.* 42-1 & 44, and alleges the following.[1]

In 2002, Yan Yan was accepted to PSU's Graduate Program in Genetics. Her enrollment, however, was deferred for one year "due to pregnancy."  *Doc.* 42-1 at ¶ 3.  After the one-year deferral, Yan Yan started the Genetics Program at age 40; thus, she was generally older than most of the other graduate students.  Despite her age, Yan Yan "achieved" her courses with top ranks in Biochemistry and Genetics.  *Id.* at ¶ 5.  Yan Yan also received a grade of "A" in her Cell Biology, Molecular Biology, Statistics, Symposiums, and teaching-focused courses. Furthermore, Yan Yan received an "assistantship" because of her academic record, completed approximately 20 projects, attracted two R01 grants from the National

---

[1]    We provide the allegations in Yan Yan's amended complaint consistent with the Rule 12(b)(6) legal standard, *infra*.

Institute of Health ("NIH")[2], published five peer-reviewed publications, two unpublished papers, two "academic books," contributed to 15 other publications, and completed all of the requirements to be awarded with a PhD in Genetics. *See id.* at ¶¶ 5-8.

Despite her alleged track record while a student in the Genetics Program, Yan Yan claims that she was subjected to discrimination because of her age, alleged disability, national origin, race, and sex. Yan Yan also claims that she was subjected to adverse actions in retaliation for having filed complaints in 2003, 2005, and 2007 about purported instances of gender discrimination she encountered, and for having complained, generally, about the difficulties associated with being a student-parent. According to Yan Yan, each of the aforementioned complaints was filed internally at PSU. *See id.* at ¶ 13.

In relation to her claims of discrimination and retaliation, Yan Yan alleges that she was deferred enrollment; 20 faculty members refused to be her student advisor; she was never awarded with a PhD degree from the Genetics Program; she was denied "authorships;" denied faculty positions; ultimately terminated from the graduate program in 2007; removed entirely from PSU in 2008; and denied

---

[2]    "The Research Project Grant (R01) is the original and historically oldest grant mechanism used by NIH. The R01 provides support for health-related research and development based on the mission of the NIH." http://grants.nih.gov/grants/funding/r01.htm (last visited April 24, 2015).

admission to other graduate programs within the University.  Moreover, as far as her alleged disability is concerned, Yan Yan claims that it stems from a personal injury she suffered on January 26, 2008, in a "work-related accident" at PSU, which she filed a Workers' Compensation claim.  *Id.* at ¶¶ 9, 15.  According to Yan Yan, the injury was to her right hand that endured multiple fractures and greatly impeded her ability to conduct research experiments.  *Id.* at ¶¶ 84, 85.

Yan Yan further alleges in the amended complaint that her academic record was better than two male students, Takeshi Shimizu and Ho Li-Lun, who received a PhD Degree in 2006 and 2009, respectively.  Yan Yan, though, does not allege which program the students were enrolled or in what Program they received a PhD Degree.  Yan Yan also claims that, despite being terminated as a student at PSU in 2008, she has since re-submitted her doctoral thesis to PSU in 2011 and 2014, but the University has not awarded her with a PhD Degree in Genetics.

Along with these allegations, Yan Yan complains that (1) she was "regularly harassed" by "senior employees" in different laboratories; (2) she was injured in 2005 because of something that a "male colleague" had caused; (3) she was "harassed" by maintenance at her home resulting in lost belongings and "legal evidences;" (4) her child was pushed by a "senior kid" at a daycare located on PSU's campus; and (5) her child was "regularly abused" at another daycare by

staff and "senior peer kids" and ultimately suffered an eye injury resulting in medical bills. *See id.* at ¶¶ 9-12.

Despite the ample allegations, we liberally construe Yan Yan's amended complaint as solely bringing a lawsuit against PSU for the alleged denial of a PhD Degree in Genetics and for the personal injury she allegedly endured on January 26, 2008. To that end, Yan Yan raises the following claims in 10 separate Counts: Count I - hostile educational environment, in violation of Title IX and PFEOA; Count II - retaliation in violation of Title IX and PFEOA; Count III - discrimination on the basis of her alleged disability, in violation of the ADA and PFEOA; Count IV - age-based discrimination, in violation of the Age Discrimination Act; Count V - retaliation in violation of the First Amendment, pursuant to 42 U.S.C. § 1983; Count VI - gender-based discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; Count VII - national-origin- and race-based discrimination, in violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983, and PEFOA; Count VIII - age-based discrimination, in violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983; Count IX - discrimination on the basis of her alleged disability, in violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983; Count X – personal injury pursuant to 18 U.S.C. § 2255. For

remedies, Yan Yan seeks compensatory damages, punitive damages, and injunctive relief.

On November 14, 2014, PSU filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Doc.* 45. The motion, which has been fully briefed, is ripe for disposition. *See Docs.* 46, 52-1, & 54. Before turning to a discussion of the pending motion, however, we are compelled to review and discuss Yan Yan's previous lawsuit filed against PSU, in this Court, in light of PSU's affirmative defense of *res judicata*.

In *Yan Yan v. Penn State University*, 4:10-CV-00212 (M.D. Pa.) ("*Yan I*"), Yan Yan was represented by counsel. With the assistance of counsel, she named PSU, Zhi-Chun Lai, and Li-Lun Ho as defendants. In pertinent part here, Yan Yan raised a claim in her amended complaint pursuant to the Rehabilitation Act (the "RA"), 29 U.S.C. § 794, for two broken fingers she allegedly sustained during a work-related incident on January 26, 2008; an injury to which she also filed a Workers' Compensation claim. The Court, however, dismissed the RA claim under the Rule 12(b)(6) legal standard, ruling that Yan Yan had failed to plausibly show that she was a person with "disability" within the statute's meaning because the pleaded injury was non-chronic and short-term. *Doc.* 21 at 9-10, 17 (4:10-CV-00212).

After the Court entered its Order on the partial motion to dismiss in *Yan I*, dismissing, among other claims, Yan Yan's RA claim, she was granted leave to file a second amended complaint. *Doc.* 33 (4:10-CV-00212).   In the second amended complaint, Yan Yan alleged that she had been awarded a Master's Degree from the University's Genetics Program in 2007 and was subsequently admitted as a PhD candidate to the Cell and Developmental Biology ("CDB") Graduate Program.  During her enrollment in the CDB Program, Yan Yan worked in a research lab controlled by defendant Lai and primarily operated by defendant Ho. While working in that lab, Yan Yan complained that she was subjected to varying acts of gender-based discrimination and harassment.

Nearly one month after the alleged incident in which she was allegedly injured on January 26, 2008, Yan Yan filed a report with PSU's campus police complaining about the harassment and discrimination she had purportedly endured by defendant Ho.  Yan Yan also talked with an individual from PSU's Judicial Affairs Office about the same complaints.  In the end, an administrative no-contact order was issued, requiring Yan Yan and defendant Ho to have no contact with each other.

Upon reporting defendant Ho's alleged actions to the police, Yan Yan went to defendant Lai to inform him that she had filed a complaint with the University Police.  As a result, Yan Yan alleged, the work relationship between her and

7

defendant Lai deteriorated.   Yan Yan further claimed that defendant Lai retaliated and discriminated against her by advancing the date of her comprehensive exam: an exam which she ultimately failed.   After failing the comprehensive exam, defendant Lai directed Yan Yan to stay away from his lab.   Yan Yan, though, filed an internal appeal with the University, seeking permission to retake the comprehensive exam for her PhD Degree in CDB.   Yan Yan succeeded in her efforts to the extent that PSU's Dean of the Graduate School permitted her to retake the comprehensive exam on August 15, 2008, which she did not do because of the alleged lack of sufficient notice.   As a result of not retaking the exam, Yan Yan was removed from PSU as a graduate student.

Based on those allegations:

> Yan [Yan] brought suit alleging that Ho's harassment and discrimination were gender-based and resulted in a hostile educational environment in violation of Title IX. She further alleged that the rescheduling of the comp exam for August 15th was a "sham" and that PSU's failure to offer "reasonable accommodations and [a] reasonable opportunity" to retake the exam further violated her rights under Title IX. In her complaint, Yan asserted that she was retaliated against for filing the police report and protesting the alleged Title IX violations, and that she was subjected to gender discrimination.

*Yan Yan v. Penn State University*, 529 F. App'x 167 (3d Cir. 2013), *cert denied*, 134 S.Ct. 2311, *rehearing denied*, 135 S.Ct. 26 (2014). For remedies, Yan Yan sought compensatory and punitive damages in addition to injunctive relief. *See Doc.* 33 (4:10-CV-00212).   On August 3, 2012, this Court entered summary

judgment in the defendants' favor on all claims raised in the second amended complaint, which the Third Circuit affirmed.  Moreover, the Supreme Court denied Yan Yan's petition for a writ of certiorari and subsequent petition for rehearing.

## II.  **Legal Standard.**

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoted case omitted).

9

In resolving a motion to dismiss, we thus "conduct a two-part analysis." *Fowler, supra*, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210–11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoted case omitted).

While traditionally focused upon the allegations contained in a complaint, a court may also consider exhibits attached to a complaint, matters of public record, and "an undisputedly authentic document" relied upon by the plaintiff and attached as an exhibit to a defendant's motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.   <u>Discussion</u>.

In moving to dismiss Yan Yan's amended complaint, PSU raises several affirmative defenses in addition to other arguments. Since the affirmative defenses may dispose of certain claims in Yan Yan's amended complaint, if not the pleading

in its entirety, we begin there.

**A. *Res Judicata.***

The first affirmative defense raised by PSU involves the federal common law doctrine of *res judicata*.[3]   *See Doc.* 46 at 8.   Generally, *res judicata* encompasses two preclusion concepts: (1) issue preclusion, a more narrow application of traditional *res judicata* that forecloses litigation of a litigated and decided matter (often referred to as collateral estoppel); and (2) claim preclusion, which disallows litigation of claims that have either been litigated or were never litigated, but which should have been presented in an earlier suit.   *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 (1984); *see also Marmon Coal Co. v. Director, Office of Workers' Compensation Programs*, 726 F.3d 387, 394 (3d Cir. 2013)(quoting *Duhaney v. Att'y Gen.*, 621 F.3d 340, 347 (3d Cir. 2010)("The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought.").   Indeed, here, PSU contends that both concepts, issue and claim preclusion, operate as a bar to Counts I-IX in the present action.   *See Doc.* 46 at 12-13.

---

[3]      "The preclusive effect of a federal-court judgment is determined by federal common law.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001).  For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of *res judicata*, which [the Supreme Court] has ultimate authority to determine and declare.  *Id.* at 508."  *Taylor v. Stugell*, 553 U.S. 880, 892 (2008).

With respect to the affirmative defense raised by PSU, the Third Circuit has explained:

> *Res judicata* is designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand. *See* 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.405[1] at 186 (2d ed. 1984). This rule reflects the need for courts to put an end to litigation. When one has been given the opportunity to fully present his case in a court and the contested issue is decided against him, "he may not later renew the litigation in another court." *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946). Although *res judicata* is a rule of finality strictly enforced and liberally applied, *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917), cited in *Federated Department Stores v. Moitie*, 452 U.S. 394, 401 (1981), it is moreover a rule of "fundamental and substantial justice, of public policy and private peace, ..." rather than a technical rule. *Id.* 244 U.S. at 299. Because of the dangers of a wooden application of *res judicata*, *Jeter v. Hewitt*, 63 U.S. (22 How.) 352, 364(1859) (in some cases, harsh results may be visited by a rule of public policy which "renders white that which is black, and straight that which is crooked...."), the Supreme Court has emphasized the importance of careful judicial inquiry prior to its enforcement. *Brown v. Felsen*, 442 U.S. 127, 132 (1979). The ease and efficiency of *res judicata* as a means of quickly avoiding an evaluation of the merits of a plaintiff's claim does not imply that the decision to apply the doctrine should be either facile or hasty.

*Purter v. Heckler*, 771 F.2d 682, 689-90 (3d Cir. 1985).

While this affirmative defense may be raised in a motion to dismiss pursuant to Rule 12(b)(6), *see Williams v. Murdoch*, 330 F.2d 745, 749 (3d Cir. 1964), the predicates establishing the defense must be apparent on the face of the complaint, *see Bethel v. Jendoco Construction Corporation*, 570 F.2d 1168, 1174, n. 10 (3d

Cir. 1978)(noting the same); *Brody v. Hankin*, 145 F. App'x 768, 769-70 (3d Cir. 2005)(reversing the district court "[b]ecause *res judicata* is an affirmative defense, and the basis for dismissing this case on *res judicata* grounds was not apparent on the face of the complaint. . . .").  Moreover, "[i]n the context of deciding a Rule 12(b)(6) motion that raises . . . preclusion concerns, and where a plaintiff has not included the existence or substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication in order to determine whether . . . preclusion [concepts] bar[] that plaintiff's claims." *M&M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010).  On a motion to dismiss, however, a court may solely take judicial notice of a prior opinion "to establish [its] existence . . . and not for the truth of the facts asserted . . . ." *Id.* (citing *Lum v. Bank of America*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004)).

### 1. Issue Preclusion.

A party may successfully assert the narrower *res judicata* concept of issue preclusion "when: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted has had a full and fair opportunity to litigate the issue in question." *Bd. of Trs. of Trucking Emps. of North Jersey Welfare*

*Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992). "Identity of legal causes of action is not required [here]." *Kundratic v. Thomas*, 573 F. App'x 167, 171 n. 6 (3d Cir. 2014).

According to PSU, "[it] has already litigated with [Yan Yan] on [the] exact issue" about her being terminated from its PhD Program. *Doc.* 46 at 10. Also, "the issue of whether [Yan Yan] had a disability was already resolved. . . ." *Id.* at 12.

Yan Yan counters, arguing primarily that the issue of her exclusion from the *Genetics* Program, *via* not being awarded with a PhD Degree, is an issue that has not been litigated. *See Doc.* 52-1 at 11. Yan Yan also contends that no valid final judgment resulted in *Yan I* because, at the summary judgment stage, "[d]iscovery was not complete" and the Court did not have evidence on her behalf to fully explore the issues raised. *See id.* at 11-12. Yan Yan further argues that the Supreme Court's dismissal of her petition for certiorari for her failure to file a proper brief does not make the judgment final. *See id.* at 12. Last, Yan Yan argues that the parties are not the same and that her ADA claim in Count III should not be deemed precluded because the issue of whether she has a disability within the meaning of the Act has not been decided. *See id.* at 12-13.

### a. Yan Yan's alleged disability.

In *Yan I*, this Court found on a Rule 12(b)(6) motion that Yan Yan had failed to plausibly show that she was a person with a "disability" within the meaning of the RA because the pleaded injury, stemming from an alleged incident in a laboratory on January 26, 2008, was non-chronic and short-term. *Doc.* 21 at 9-10, 17 (4:10-CV-00212). Accordingly, the Court dismissed her RA claim. *Id.* After the Court entered its order dismissing her RA claim, Yan Yan did not file a motion for reconsideration on the issue or seek to appeal the Court's ruling on that basis. *But see, Doc.* 22 (4:10-CV-00212)(moving for reconsideration of the Court's order on a different claim). Moreover, Yan Yan did not subsequently attempt to re-plead her claim under the RA in her second amended complaint. *See Doc.* 31 (4:10-CV-00212). Finally, here, Yan Yan raises a claim under the ADA on the basis of the same alleged injury, which she again attempts to pass off as a disability. *See Doc.* 42-1 at ¶¶ 9, 15, 40.

We agree with PSU and find that the issue regarding her alleged disability was previously decided. "Whether suit is filed under the [RA] or under the [ADA], the substantive standards for determining liability are the same," *see McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995)(citation omitted), and one of the only differences between claims under the ADA and the RA is their standards for causation, *C.G. v. Pennsylvania Department of Education*, 734 F.3d

229, 235 (3d Cir. 2013)(explaining the same).  Moreover, as the Third Circuit more recently noted, identity of a "cause of action" is not required under the narrower doctrine of issue preclusion; therefore, it is of no concern to us that the claim in this lawsuit may have arisen in the context of a different cause of action in *Yan I*. Furthermore, a dismissal for failure to state a claim under Rule 12(b)(6) is a final judgment on the merits for *res judicata* purposes, *Lewis v. Smith*, 361 F. App'x 421, 423-24 (2010)(citing, *inter alia*, *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981)), and Yan Yan, who was a party with counsel to the lawsuit in *Yan I,* had a full and fair opportunity to litigate the issue, but did not do so beyond the filing of a brief-in-opposition to the partial motion to dismiss.  *See Doc.* 19 at 10-13 (4:10-CV-00212); *see also*, 12 Williston on Contracts § 35:62 (4th ed.)("When the relationship of attorney and client exists, the client is bound by the acts of its attorney within the scope of the latter's authority. . . .").

Since we find that the issue of whether Yan Yan is an individual with a disability, within the meaning of the ADA, has already been decided, she is precluded from bringing her ADA claim in Count III; thus, Yan Yan's ADA claim should be dismissed with prejudice.[4]

_____

[4]     To the extent Yan Yan attempts to raise additional allegations about her alleged injury to prove that she is a person with a disability, by now claiming that she lost function of her right hand, *see Doc.* 42-1 at 11, she had the opportunity to assert that allegation in *Yan I*, but she did not do so.  Indeed, by the time the defendants in *Yan I* sought to challenge her alleged disability, nearly two and a half

**b.  Yan Yan's termination from PSU's graduate program.**

In *Yan I*, this Court entered an order granting summary judgment to PSU and the individual defendants, and the Third Circuit affirmed.  The Supreme Court also denied certiorari to Yan Yan and denied her petition for rehearing.

A ruling on summary judgment equates to a ruling on the merits, *see Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.3d 895, 898 n. 6 (1987)(quoting *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir. 1985)("Summary judgment is a judgment on the merits; it has the same effect as if the case had been tried by the party against whom judgment is rendered and decided against him.")), and "it is well established that an erroneous prior judgment nonetheless has preclusive effect," *Hickox v. County of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014)(citing *Delaware River Port Authority v. Fraternal Order of Police*, 290 F.3d 567, 576-77 (3d Cir. 2002)).  Yan Yan nonetheless apparently contends that the summary-judgment ruling in *Yan I* should have no preclusive effect because she did not have due process, in that discovery was not complete and the Court did not have evidence from her to consider.

---

years had passed from the time the alleged injury occurred.  Thus, she certainly would have known by then whether she "lost function" of her hand by that time. In sum, Yan Yan had a full and fair opportunity to litigate the issue and we do not find that this "new" allegation is sufficient to overcome the preclusive effect of the earlier ruling by this Court, on the partial motion to dismiss.

Contrary to Yan Yan's argument, this Court's ruling on summary judgment was made after the close of discovery. *See Yan Yan*, 529 F. App'x at 170. Also, Yan Yan not only had an opportunity to engage in discovery, but she never presented any evidence sufficient to demonstrate a genuine issue for trial; sought an extension of the discovery deadlines; filed motions to compel answers or interrogatories; or alerted the Court of the need for additional discovery. *Id.* Thus, Yan Yan's argument on due process grounds, that the judgment was not valid and final, because discovery was incomplete, is meritless. Similarly, that Yan Yan might not have filed a proper brief in the Supreme Court is not a sufficient reason for us to consider the previous judgment as lacking preclusive value. Furthermore, the record from *Yan I* demonstrates that the Supreme Court did not dismiss her petition for certiorari or petition for a rehearing because of improper briefs that were filed. *See* 134 S.Ct. 2311 & 135 S.Ct. 26. Thus, we also reject her due process argument on that basis as well, and, overall, find that a valid final judgment was entered on summary judgment in *Yan I*.

Despite our finding that a valid final judgment was entered on the claims in *Yan I*, no court had occasion to decide the legal issues in Counts I-II and IV-IX in this lawsuit relating to the denial of a PhD Degree from an entirely separate program, for discriminatory and retaliatory reasons. Moreover, as we understand Yan Yan's amended complaint in this lawsuit, she is not complaining about her

exclusion from PSU overall or the alleged acts of defendants Ho and Lai or the denial to her of a PhD Degree from the CDB Program; instead, in Counts I-II and IV-IX Yan Yan complains solely about the denial of a PhD Degree in Genetics based on discriminatory and retaliatory acts that occurred before the acts in the previous lawsuit, in addition to alleged acts that occurred upon the resubmission of her thesis in 2011 and 2014.   Thus, we disagree with PSU that the narrower concept of issue preclusion bars Yan Yan's claims in Counts I-II and IV-IX on its motion to dismiss.

### 2. Claim Preclusion.

For a party to succeed on the affirmative defense of *res judicata*, through the encompassed concept of claim preclusion, three elements must be satisfied: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Marmon Coal Co.*, 726 F.3d at 394 (quoting *Duhaney*, 621 F.3d at 347)(internal quotations omitted). This preclusion concept operates to bar claims that were actually brought in a previous cause of action in addition to claims that could have been brought there. *See id*, *supra*.

According to PSU, Yan Yan's claims in Counts I-II and IV-IX are otherwise barred because they are claims that were, or could have been, raised in *Yan I*: a cause of action which PSU considers to be the same as the cause of action in the

present lawsuit. *See Doc.* 46 at 10, 12. In opposition, we understand Yan Yan to rely upon the same argument, *supra*, in large measure. She adds, however, that the two causes of actions are not the same. *See Doc.* 52-1 at 11, 13

For starters, we find that the parties are the same. *See id.* at 10-11. In both cases, PSU is clearly named as a defendant and Yan Yan, who was represented by counsel in *Yan I*, is also the same party. *Doc.* 42-1 at ¶ 2; *Doc.* 33 at ¶ 3 (4:10-CV-00212). That Yan Yan also named other individual defendants in *Yan I* does not act to foreclose the concept of claim preclusion from applying to her claims against PSU in this lawsuit. This is especially true given that Yan Yan named PSU as a defendant in each Count, in the earlier case. Furthermore, other than briefly mentioning her child in the body of the present amended complaint, we do not liberally construe the amended complaint to include the child as a plaintiff in any of the Counts, much less Counts I-II and IV-IX, contrary to Yan Yan's argument.[5]

Next, since we have already discussed the finality of the Court's order on the motions to dismiss and for summary judgment in *Yan I*, *supra,* we turn to the third element of claim preclusion. On this element, the Third Circuit has more

---

[5]   As PSU points out, it is even questionable whether the child would have standing to raise claims for Yan Yan's alleged injuries. *See Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014)(explaining that the doctrine of prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights)(quoted cases omitted). Similarly, we doubt that Yan Yan's child would have the capacity to sue. *See* Fed.R.Civ.P. 17(c).

recently explained:

> "We have disavowed attempts to create a simple test for
> determining what constitutes a cause of action for *res judicata*
> purposes." [*Duhaney v. Att'y Gen.*, 621 F.3d 340, 348 (3d Cir.
> 2010)] (internal quotation marks and citation omitted). The focus
> of the inquiry is the "essential similarity of the underlying events
> giving rise to the various legal claims." *Id.* (internal quotation
> marks and citation omitted). Factors relevant to this
> determination include (1) whether the acts complained of were
> the same; (2) whether the material facts alleged in each suit were
> the same; and (3) whether the witnesses and documentation
> required to prove such allegations were the same. *Id.* The mere
> existence of common elements of fact between two claims does
> not establish the same cause of action if the critical acts and the
> necessary documentation were different for the two claims. *See
> id.* at 349. In addition, an identical sought-after remedy for each
> of the claims is not dispositive for purposes of determining
> whether the second claim involves a new cause of action.  *See id.*

*Marmon Coal Co.*, 726 F.3d at 394.

In Yan Yan's amended complaint, it is obvious that her factual allegations

bear some similarity to those in *Yan I*.  Moreover, we are cognizant that in *Yan I*

this Court received undisputed evidence of the following:

> Plaintiff was accepted into Penn State's Graduate Degree
> Program in Genetics in 2002; she deferred admission for one
> year because she was pregnant. (*Doc.* 68, ¶¶ 14–15). Plaintiff sat
> for and failed her first comprehensive exam in the Genetics
> program in August of 2005. (*Id.* ¶ 18). [footnote omitted]
> Plaintiff passed the Genetics comprehensive exam on her second
> attempt in November of 2005. (*Id.* ¶ 19). In February of 2007,
> Plaintiff was terminated from the Genetics program; her
> termination letter advised that she demonstrated a lack of
> understanding of her experiments, an inability to interpret data,

and an inability to make meaningful connections between data and her specific scientific purpose. (*Id.* ¶ 21).

Plaintiff then approached Dr. Hong Ma, then Chair of the CDB program, regarding applying to the program. (*Id.* ¶ 24). Plaintiff contacted several faculty members seeking permission to work in their labs; Defendant Lai agreed in May of 2007. (*Id.* ¶¶ 25–27). On June 18, 2007, Defendant Lai, Plaintiff, and Dr. Ma signed a written memorandum of understanding formally admitting Plaintiff to the CDB program. (*Id.* ¶¶ 28–29). Plaintiff was also granted a Teaching Assistantship ("TA") for the fall of 2007, a position which was renewed in the spring of 2008. (*Id.* ¶ 30).

*Yan Yan*, 2012 WL 3201888, at *2-*3.

Nowhere in the Third Circuit's opinion affirming this Court's judgment in *Yan I*, however, did the court make reference to the above-referenced facts. *See Yan Yan*, 529 F. App'x at 169-71. Thus, we do not find that such facts were material to the earlier lawsuit; though, they could be material here. We also cannot take judicial notice of these facts from the Court's earlier opinion without converting PSU's motion to dismiss into one for summary judgment. *See, supra, M&M Stone Co.*, 388 F. App'x at 162.

Furthermore, here, unlike in *Yan I*, Yan Yan raises claims of discrimination and retaliation for the denial of a PhD Degree in Genetics: not for the overall exclusion from PSU, the denial of a PhD Degree in the CDB Program, or for alleged acts of discrimination and retaliation by defendants Ho and Lai. We also do not believe that the same witnesses and evidence would be needed for either party in this lawsuit to prove, or defend against, the claims in Counts I-II and IV-

IX.  In other words, the two causes of action are not the same, and we deny PSU's

attempt to dismiss Counts I-II and IV-IX *via* the concept of claim preclusion.[6]

### B. Statute of Limitations.

PSU next raises the statute-of-limitations defense arguing that Yan Yan's

Title IX and 42 U.S.C. § 1983 claims in Counts I-II and V-IX are time-barred

under the respective statute of limitations. Similar to the affirmative defense of *res*

*judicata*, on a Rule 12(b)(6) motion, a defendant can only prevail on the statute-of-

limitations defense if a plaintiff's tardiness in bringing the action is apparent on the

face of the complaint.  *See Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174

(3d Cir. 1978); *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85,

106 n. 13 (3d Cir. 2010).

According to PSU, Yan Yan's Title IX and § 1983 claims are time-barred

given that she was not even enrolled as a student at the University, in any Program,

as of 2008, making her claims of discrimination and retaliation late by five years,

at minimum.  *See Doc.* 46 at 13; *Doc.* 54 at 5 n. 2.  Yan Yan does not appear to

dispute that more than two years has lapsed since the first alleged discriminatory

---

[6]     Despite the fact that Yan Yan's alleged disability did not occur until after
she was no longer a part of the Genetics Program, we do not construe the current
allegations, as a whole, as an attempt by her to re-litigate claims associated with
her time enrolled in the CDB Program.  Rather, we liberally construe her *pro se*
claims of disability discrimination to be aimed at the denials of a PhD degree in
Genetics, upon the resubmission of her thesis in 2011 and 2014.

and retaliatory acts occurred in 2007. Yan Yan, instead, argues that the continuing-violations doctrine should save her claims from the statute-of-limitations bar since the University had also denied her a PhD Degree in Genetics upon the resubmission of her thesis in 2011 and 2014, respectively. In essence, Yan Yan contends that a pattern of discrimination and retaliation was still occurring as late as 2014. *See Doc.* 52-1 at 12, 13.

In Pennsylvania, any action to recover damages for injury to a person based on negligent, intentional, or otherwise tortious conduct must be commenced within two years of the occurrence of the injury. 42 Pa. C.S. § 5524(7). This two year statute of limitations also applies to any action to recover damages under 42 U.S.C. § 1983 and Title IX. *See Kasteleba v. Judge*, 325 F. App'x 153, 156 (3d Cir. 2009) (stating that federal courts apply a state's personal injury statute of limitations claims to § 1983 claims); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77–78 (3d Cir. 1989) (concluding that "the most analogous statute of limitations [for a Title IX claim] is Pennsylvania's two-year statute of limitations period applicable to personal injury actions . . . ."). While the length of the statute of limitations is governed by state law, federal law governs when a cause of action accrues. Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)

(citation omitted); *see also Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998).

Under the continuing-violations doctrine, a plaintiff can sue for actions that occurred outside the applicable limitations period if "a defendant's conduct is part of a continuing practice [and] . . . the last act evidencing the continuing practice falls within the limitations period." *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001)(internal quotation marks and citation omitted). "The doctrine's focus 'is on affirmative acts of the defendants.'" *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014)(citing *Cowell*, 263 F.3d at 293). The reach of the continuing-violations doctrine is "understandably" narrow, often only applying in employment discrimination cases, "where only in retrospect will a plaintiff recognize that seemingly unconnected incidents were, in fact, part and parcel of a larger discriminatory pattern." *Id.* (citation omitted). As such, equitable relief under the doctrine, from the statutory limitations period, is appropriate only where the alleged violation is "occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (internal quotations and quoted case omitted).

Here, no one disputes that absent the application of the continuing-violations doctrine, Yan Yan's claims in Counts I-II and V-IX, related to the denial of her PhD Degree in Genetics during her enrollment period and in 2011, upon

resubmission of her thesis, would be time-barred.  In presuming for argument's sake that the continuing-violations doctrine would apply to Yan Yan's Title IX[7] and § 1983 claims in those Counts, we find that the most recent act by PSU in 2014, the alleged denial of a PhD Degree in Genetics, is the only act that falls within the two-year statute of limitations, and it is a discrete and isolated act.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)("Discrete acts include, for example, 'termination, failure to promote, denial of transfer, or refusal to hire.'"); *accord id.* at 110 ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'").   Thus, the continuing-violations doctrine does not operate to save Yan Yan's claims relating to the denial of a PhD Degree in Genetics as late as 2011.  Consequently, the claims in Counts I-II and V-IX, related to the denial of a PhD Degree in Genetics up to the year 2011, should be dismissed with prejudice.  Moving forward in this Report, our focus on Counts I-II and V-IX will solely be on the alleged discriminatory and retaliatory act of denying her with a PhD Degree in Genetics in 2014, as set forth in those Counts.[8]

---

[7]     *But see, Gjeka v. Delaware County Community College*, No. 12-4548, 2013 WL 2257727, at *4-*5 (E.D. Pa. May 23, 2013)(declining to extend the continuing-violations doctrine to Title IX claims).

[8]     PSU did not raise the statute-of-limitations defense with respect to Count IV; thus, Count IV survives as to all aspects of Yan Yan's claim (i.e. that she was denied a PhD Degree in Genetics during her enrollment at the University and, subsequently, in 2011 and 2014).

### C. The Alleged Denial of a PhD Degree in Genetics When She was No Longer Enrolled in the University.

With respect to the remaining aspect of Yan Yan's claims in Counts I-II and V-IX, she was not enrolled as a student in the University in 2014. *See Doc.* 42-1 at ¶ 13. The same holds true with respect to Yan Yan's claim in Count IV that she was denied a PhD Degree in 2011 and 2014 because of her age.

Title IX provides, with exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681.

> Though cast in broad terms, § 1681 . . . addresses itself only to sex discrimination against the participants in and the beneficiaries of federally assisted education programs. Section 1681 must therefore be read to protect from sex discrimination only those persons for whom the federally assisted education programs are established, and this can only mean the school children *in those programs*.

*Romeo Community Schools v. United States Department of Health, Education, and Welfare*, 438 F.Supp. 1021 (E.D. Mi. 1977)(emphasis added), *judgment affirmed*, 600 F.2d 581 (6th Cir.), *cert. denied*, 100 S.Ct. 467 (1979). While raised in a different context, we agree with that interpretation of Title IX and interpret it the same way. Accordingly, since Yan Yan was not a student in a PSU program in 2014, her Title IX claims in Counts I and II should be dismissed with prejudice.

27

Next, the Age Discrimination Act of 1975 provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102.   Given the similar statutory construction of this Act in comparison to Title IX, we likewise interpret the statute as solely protecting individuals that are participants in a program or activity receiving federal assistance.  *See also,* 42 U.S.C. § 6101 ("It is the purpose of this chapter to prohibit discrimination on the basis of age *in* programs or activities receiving Federal financial assistance.")(Emphasis added).  Thus, since Yan Yan was no longer a student at PSU in 2014, she was not a participant in any program or activity of the same, and Count IV should be dismissed with prejudice for the denial of a PhD Degree in Genetics in 2011 and 2014.

Finally, in Counts V through VIII, Yan Yan raises constitutional claims against PSU, pursuant to 42 U.S.C. § 1983.  In pertinent part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

28

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). To establish a claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

In this instance, Yan Yan's claims pursuant to § 1983 are brought for perceived violations of the First (retaliation) and Fourteenth (violation of equal protection) Amendments. Noticeably missing from Yan Yan's amended complaint, however, are plausible allegations suggesting that PSU had an obligation or duty to review the resubmission of her thesis under the same or similar standards as a student currently enrolled in the Genetics Program, or that a former student such as herself could even resubmit a thesis for reconsideration without being enrolled in any program at the University. In this unique scenario, with the absence of such allegations, it appears entirely implausible for an individual such as Yan Yan to successfully raise constitutional claims of discrimination or retaliation against an entity such as PSU for denying her a PhD

Degree.[9]   Accordingly, we recommend that the constitutional claims in Counts V through VIII be dismissed without prejudice.

### D. Yan Yan's Claim under the Age Discrimination Act for the Denial of a PhD Degree in Genetics in 2007.

According to PSU, this claim should be dismissed for Yan Yan's failure to exhaust administrative remedies under the Age Discrimination Act.  *Doc.* 46 at 15; *Doc.* 54 at 7 n. 6.   Again, the purpose of the Age Discrimination Act is "to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101. "[N]o person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102.

"Federal district courts have subject matter jurisdiction over [Age Discrimination Act] claims only if the plaintiff has exhausted her administrative remedies and has complied with the statutory notice requirements." *Jackson v. Argosy University*, No. 12-2091, 2014 WL 309306, at * 3 (D. Nev. Jan. 27, 2014)(citing *Long v. Fulton Cnty. Sch. Dist.*, 807 F.Supp.2d 1274, 1283 (N.D. Ga.

---

[9]    In her brief in opposition, Yan Yan plainly contends, "[t]here is no requirement for enrollment [in order for a PhD Degree to] issu[e]," *Doc.* 52-1 at 13; however, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotations and citation omitted).

2011); *Rannels v. Hargrove*, 731 F.Supp. 1214, 1221 (E.D. Pa. 1990); *Popkim v. Zagel*, 611 F.Supp. 809, 812 (C.D. Ill. 1985); 15 Am.Jur.2d Civil Rights § 387 (2013)).   Under the Age Discrimination Act, "administrative remedies shall be deemed exhausted upon the expiration of 180 days from the filing of an administrative complaint during which time the Federal department or agency makes no finding with regard to the complaint, or upon the day that the Federal department or agency issues a finding in favor of the recipient of federal assistance, whichever occurs first."  42 U.S.C. § 6104(f); 45 C.F.R. § 90.50(a).

Here Yan Yan fails to allege that she exhausted her claim under the Age Discrimination Act; instead, as far as we can tell, she solely alleges that she complained to PSU about gender-based discrimination and then filed unspecified complaints with the Pennsylvania Human Rights Commission.  *See Doc.* 42-1 at ¶¶ 13-14, 44-49; *see also, id.* at ¶¶ 69-75.  Indeed, in the amended complaint, she does not even indicate compliance with the Act's exhaustion requirements prior to bringing this lawsuit or whether she also adhered to the Act's notice requirements, *see* 42 U.S.C. § 6104(e)(1); 45 C.F.R. § 90.50(3)(iii), (iv).  Accordingly, Yan Yan's Age Discrimination Act claim in Count IV should be dismissed without prejudice for her failure to plead exhaustion and adherence to the notice requirements.  *See Morales v. New York*, 22 F.Supp.3d 256, (S.D.N.Y. May 22, 2014)(dismissing plaintiff's Age Discrimination Act claim for failing to indicate

compliance with the Act's requirement that he exhaust remedies prior to bringing suit); *Jackson*, 2014 WL 309306, at *4 (dismissing plaintiff's claims under the Age Discrimination Act for failing to plead adherence to the Act's notice requirements); *Jackson v. Board of Education*, No. 10-5710, 2012 WL 3079259, at *2-*3 (N.D. Ill. July 27, 2012)(dismissing plaintiff's Age Discrimination Act claims for failing to allege in the complaint that she exhausted her administrative remedies under the act); *Rannels*, 731 F.Supp. at 1221 (dismissing plaintiff's Age Discrimination Act claims for failing to plead exhaustion and adherence to the notice requirements).

### E. Personal Injury.

Next, in the amended complaint, Yan Yan refers to the injury she allegedly suffered in January 26, 2008 -- the same injury she attempts (and attempted) to assert as a disability within the meaning of the ADA (and RA) – to set forth a claim under 18 U.S.C. § 2255. *See Doc.* 42-1 at ¶ 84. Section 2255 of Title 18 provides the following:

> **(a) In general.** -- Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

> **(b) Statute of limitations.** -- Any action commenced under this section shall be barred unless the complaint is filed within 10 years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability.

18 U.S.C. § 2255 (a), (b).  Clearly, Yan Yan does not qualify to recover under this statute since she elsewhere alleges in the amended complaint that she was not a minor at the time of the alleged incident when the injury is said to have resulted.[10]

Moreover, as PSU points out, she has not alleged that was a victim of any of the violations referred to in § 2255.  Count X, therefore, should be dismissed with prejudice.[11]

---

[10]    We interpret Yan Yan's amended complaint as alleging that she was 40 years old while enrolled in the Genetics Program, *see Doc.* 42-1 at ¶¶ 1, 46.  Even assuming she meant that she was 40 years old at the time the amended complaint was filed, she would have been approximately 27 years old in 2002, when she was first accepted into PSU's Genetics Program: obviously not a minor.

[11]    Yan Yan's argument in opposition here, *Doc.* 52-1 at 15, is unclear.  On the one hand, we understand her argument as suggesting that she qualifies to recover for her alleged injury because her child was also injured while at daycare at PSU.  Such an argument, though, clearly lacks merit under the language of the statute.  On the other hand, we understand Yan Yan as arguing that she is raising a personal injury claim on behalf of her child.  Yan Yan, however, has not named her child as a plaintiff and we do not liberally construe the amended complaint as including a claim under the statute, in Count X, for her child's alleged injuries at day care.  *See Doc.* 42-1 at ¶¶ 83-89.  Moreover, as previously stated, it is axiomatic that a brief-in-opposition cannot be used to amend a pleading.

**F. Supplemental Jurisdiction.**

In accordance with the jurisdictional statute, 28 U.S.C. § 1367, federal courts may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)("Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

Here, we have recommended that Yan Yan's federal claims be dismissed, leaving only her state law claims under the PFEOA in Counts I-III and VI.[12]   In reviewing her remaining claims under the PFEOA, we further find that there are no compelling considerations that would weigh in favor of the Court exercising its supplemental jurisdiction.   Consequently, we recommend that the Court decline to exercise supplemental jurisdiction over the PFEOA claims and dismiss them.

---

[12]   To the extent the amended complaint could be construed to include state-law claims for her child's alleged injuries, our recommendation in this Section of this Report should extend to such claims.

## IV.  <u>Recommendations</u>.

Based on the foregoing, **WE RECOMMEND** that PSU's motion to dismiss (*Doc.* 45) be **GRANTED** and all of Yan Yan's claims in her amended complaint (*Doc.* 42-1) be **DISMISSED**.  The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **7th** day of **May 2015**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge